IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION – CINCINNATI

| | | |
|---|---|---|
| E.K., et al., | : | Case No. 1:24-cv-747 |
| | : | |
| Plaintiffs, | : | Judge Matthew W. McFarland |
| | : | |
| v. | : | |
| | : | |
| THE COOPER COMPANIES, INC., et al., | : | |
| | : | |
| Defendants. | : | |

---

### ORDER GRANTING THIRD-PARTY DEFENDANTS' MOTIONS TO DISMISS (Docs. 22, 24)

---

This matter is before the Court on the Motions to Dismiss for Lack of Personal Jurisdiction filed by Third-Party Defendants Hamilton Thorne Ltd. and Embryotech Laboratories Inc. (Docs. 22, 24). Third-Party Plaintiff CooperSurgical, Inc. filed a Consolidated Response in Opposition (Doc. 31), to which Third-Party Defendants filed a Consolidated Reply in Support (Doc. 33). CooperSurgical also filed a Request for Judicial Notice (Doc. 30), and Third-Party Defendants filed two Motions for Leave to File Notice of Supplemental Judicial Opinion (Docs. 34, 36). This matter is ripe for the Court's review. As an initial matter, the Court **GRANTS** Third-Party Defendants' Motions for Leave to File Notice of Supplemental Judicial Opinion (Docs. 34, 36). For the reasons below, the Court **GRANTS IN PART** CooperSurgical's Request for Judicial Notice (Doc. 30) and **GRANTS** Third-Party Defendants' Motions to Dismiss (Docs. 22, 24).

## BACKGROUND

Defendant and Third-Party Plaintiff CooperSurgical produces embryo culture media ("media"), which are solutions used to form and develop embryos in the early stages of in vitro fertilization ("IVF"). (Am. Compl., Doc. 11, ¶¶ 1–6, 22, 27.) Plaintiffs E.K. and N.D. assert product liability claims against CooperSurgical, alleging that defects in CooperSurgical's media destroyed their embryos during an IVF procedure. (*Id.* at ¶¶ 6, 83–111.) Plaintiffs seek compensatory and punitive damages from CooperSurgical. (*Id.* at ¶ 7.)

Embryotech, a subsidiary of Hamilton Thorne, conducts quality testing on media products for companies before they are distributed to IVF clinics. (Third-Party Compl., Doc. 15, ¶ 9.) Embryotech is a Delaware corporation with its principal place of business located in Haverhill, Massachusetts, and Hamilton Thorne is a Canadian corporation with its principal place of business located in Beverly, Massachusetts. (*Id.* at ¶¶ 5–6.) In accordance with a 2023 agreement, Embryotech conducted quality testing on media produced by CooperSurgical. (*Id.* at ¶¶ 34–48.) This testing took place at Embryotech's Haverhill, Massachusetts testing facility. (2023 Agreement, Doc. 31-1, Pg. ID 573.) CooperSurgical filed its Third-Party Complaint against Embryotech and Hamilton Thorne on April 16, 2025. (Third-Party Compl., Doc. 15). The Third-Party Complaint alleges that Embryotech failed to adequately test the media at issue in Plaintiffs' Amended Complaint, and brings claims for implied indemnification and contribution under Ohio Revised Code § 2307.25. (*Id.* at ¶¶ 65–67.) Embryotech and Hamilton Thorne

2

subsequently filed separate Motions to Dismiss for Lack of Personal Jurisdiction (Docs. 22, 24).

## LAW & ANALYSIS

As a preliminary matter, the Court will consider CooperSurgical's Request for Judicial Notice (Doc. 30) in connection with its Response in Opposition to Third-Party Defendants' Motions to Dismiss (Doc. 31). Then, the Court will turn to the personal jurisdiction analysis.

### I. Request for Judicial Notice

CooperSurgical requests that the Court take judicial notice of certain pages of what appears to be the Embryotech website, as well as a page on the United States Centers for Disease Control and Prevention ("CDC") website. (Request for Judicial Notice, Doc. 30, Pg. ID 525.) Under Rule 201 of the Federal Rules of Evidence, a court can take judicial notice of a fact that is "not subject to reasonable dispute" because (1) it is "generally known" within the territorial jurisdiction of the trial court, or (2) it "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Public records and government documents, including those available on the internet, are generally not considered to be "subject to reasonable dispute." *Total Benefits Planning Agency Inc. v. Anthem Blue Cross & Blue Shield*, 630 F. Supp. 2d 842, 849 (S.D. Ohio 2007).

As it relates to the pages of the purported Embryotech website, CooperSurgical's request presents two problems. First, it is possible that this website is no longer consistent with how it appeared during the relevant period in the Third-Party Complaint. Second,

3

the Court cannot verify the accuracy of the information found on this non-government website. *See Plateau Cos. Ins. Co. v. Securranty, Inc.*, 608 F. Supp. 3d 566, 571 (M.D. Tenn. 2022) ("[I]t is generally improper for a court to take judicial notice of a non-governmental website, particularly when it is used for the truth of the matter, and not its mere existence.").

For these reasons, the professed Embryotech website may be subject to reasonable dispute and the Court declines to take judicial notice of it at this juncture. However, given that this request is unopposed and that the website pages do not change the personal jurisdiction outcome in this case, the Court considers the website in the analysis below. Additionally, the Court will take judicial notice of the CDC website.

## II. Motion to Dismiss for Lack of Personal Jurisdiction

When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff has the burden to prove jurisdiction exists. *CompuServe Inc. v. Patterson*, 89 F.3d 1257, 1261–62 (6th Cir. 1989). When resolving the personal jurisdiction issue before trial, a court may either: (1) determine the issue considering only affidavits; (2) permit discovery; or (3) conduct an evidentiary hearing on the merits alone. *Intera Corp. v. Henderson*, 428 F.3d 605, 614 n. 7 (6th Cir. 2005). If a hearing is not held, the plaintiff must make only a prima facie showing of personal jurisdiction, with the pleadings and affidavits viewed in a light most favorable to the plaintiff. *Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1272 (6th Cir. 1998). A plaintiff makes a prima facie showing by "establishing with reasonable particularity sufficient contacts between [the defendants] and the forum state to support jurisdiction." *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002). The

Court may, however, consider a defendant's undisputed factual assertions. *Conn v. Zakharov*, 667 F.3d 705, 711 (6th Cir. 2012). Here, no party has requested an evidentiary hearing, and the Court does not find one necessary for resolving the pending matter. Accordingly, CooperSurgical must only provide prima facie evidence of personal jurisdiction.

Under Federal Rule of Civil Procedure 12(b)(2), a court must dismiss an action if it lacks personal jurisdiction over a defendant. *Dualite Sales & Servs. v. Anthologic, Inc.*, No. 1:24-CV-479, 2025 U.S. Dist. LEXIS 127033, at *3 (S.D. Ohio July 3, 2025). There are two varieties of personal jurisdiction—general and specific. *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021). CooperSurgical concedes that general jurisdiction does not apply in this case. (*See* Response, Doc. 31, Pg. ID 534, n.7.) Thus, CooperSurgical must show that this Court has specific jurisdiction over Embryotech and Hamilton Thorne.

### A. Specific Jurisdiction

"When sitting in diversity, a federal court may exercise [specific] personal jurisdiction over an out-of-state defendant only if a court of the forum state could do so." *Blessing v. Chandrasekhar*, 988 F.3d 889, 901 (6th Cir. 2021) (citation omitted). "Under Ohio law, personal jurisdiction over non-resident defendants is available only if (1) the long-arm statute confers jurisdiction and (2) jurisdiction is proper under the Federal Due Process Clause." *Conn v. Zakharov*, 667 F.3d 705, 712 (6th Cir. 2012). CooperSurgical "must clear both the statutory and the constitutional hurdles, and the Court is free to consider

them in either order." *Baker v. Bensalz Prods., Inc.*, 480 F. Supp. 3d 792, 801 (S.D. Ohio 2020).

Here, because the Court finds that exercising personal jurisdiction over both Third-Party Defendants would violate the Due Process Clause, the Court's analysis begins and ends with this inquiry. The Due Process Clause requires a court to first determine that a defendant "not present within the territory of the forum . . . ha[s] certain minimum contacts" with the forum as not to offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quotations omitted). A three-part test guides this inquiry: (1) "the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state[;]" (2) "the cause of action must arise from the defendant's activities there[;]" and (3) "the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." *Nationwide Mut. Ins. Co. v. Tryg Int'l Ins. Co., Ltd.*, 91 F.3d 790, 794 (6th Cir. 1996) (citing *S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968)).

        i.    **Purposeful Availment**

For a defendant to purposefully avail himself of a court's jurisdiction, his contacts with the forum state must "proximately result from actions by the defendant himself that create a substantial connection with the forum State." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (quotations omitted). Thus, purposeful availment results when a defendant "deliberately . . . engage[s] in significant activities within a State" or "create[s]

6

continuing obligations between himself and residents of the forum." *Id.* at 475–76. However, purposeful availment does not result when the defendant's contacts with the forum state are "random, fortuitous, or attenuated." *Id.* at 475.

CooperSurgical alleges that Third-Party Defendants purposefully availed themselves of Ohio by knowing that "they were responsible for performing pre-distribution quality assurance tests on the embryo culture media that would be distributed to IVF clinics across the country, including to clinics in Ohio." (Third-Party Compl., Doc. 15, ¶ 9.) Specifically, CooperSurgical first advances a stream of commerce theory. (Response, Doc. 31, Pg. ID 535–40.) "[T]he placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State." *Bridgeport Music, Inc. v. Still N the Water Publ'g*, 327 F.3d 472, 479 (6th Cir. 2003) (citing *Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 112 (1987) (plurality opinion)). Instead, there must also be a showing that the defendant displayed "an intent or purpose to serve the market in the forum State." *Asahi*, 480 U.S. at 12. Such a showing can be made by demonstrating a "plus" factor such as "defendant's direction or control over the flow of the product into the forum; the quantity of the defendant's particular product regularly flowing into the forum; and the distinctive features of the forum that connect it with the product in question." *Bullock v. Otto Imports*, No. 4:19-CV-149, 2020 WL 5803517, at *2 (W.D. Ky. Sept. 3, 2020).

In support of its stream of commerce theory, CooperSurgical contends that Third-Party Defendants participated in the manufacturing of its media product, analogizing the testing services provided by Third-Party Defendants to the manufacturing of component

7

parts. (Response, Doc. 31, Pg. ID 536.) CooperSurgical then posits that Third-Party Defendants' supposed participation in the manufacturing of the media would expose it to personal jurisdiction here because Third-Party Defendants knew that the media could be distributed in Ohio. (*Id.* at Pg. ID 538.) This conjecture falls flat for two reasons.

First, the testing of the media by Third-Party Defendants constituted the provision of a service, not the manufacturing of a product. CooperSurgical does not provide any authority in the Sixth Circuit that applies the stream of commerce theory to services. The inapplicability of stream of commerce jurisdiction to services rendered is logical— "[w]hen an entity creates and sells a product, that product—and any defects or liabilities—travel with it." *Angel's Dream, LLC v. Toledo Jet Ctr., LLC,* 721 F. Supp. 3d 601, 614 (N.D. Ohio 2024). Services, unlike products, "have a beginning and an end. Once the service is complete, it is done. It does not travel, as does a product." *Id.*

CooperSurgical argues that the reasoning in *Angel's Dream* does not apply here because, unlike the defendants in *Angel's Dream*, Third-Party Defendants participated in the chain of distribution of CooperSurgical's media product. (Response, Doc. 31, Pg. ID 537.) In support of this contention, CooperSurgical notes that Third-Party Defendants' testing services influenced which media products were ultimately distributed. (*Id.*) In *Angel's Dream*, though, the defendants provided third-party airworthiness testing prior to the sale of an aircraft. *Angel's Dream,* 721 F. Supp. 3d at 605–06. The defendants in that case did not participate in the manufacturing, distribution, sale, or purchase of the aircraft. *Id.* Thus, like Third-Party Defendants, the defendants in *Angel's Dream* provided pre-sale testing that others relied upon when deciding whether to proceed with a

8

transaction. As such, CooperSurgical's attempt to distinguish *Angel's Dream* from the instant matter is unconvincing.

Second, even if Third-Party Defendants could be considered participants in the manufacturing of CooperSurgical's media product, their alleged knowledge that the media would be distributed nationally is not enough to establish purposeful availment. By itself, a defendant's knowledge that a product may be distributed across the nation "is insufficient conduct upon which to predicate purposeful availment." *Bridgeport Music, Inc. v. Still N the Water Publ'g*, 327 F.3d 472, 480 (6th Cir. 2003). Instead, a defendant must make a "deliberate decision" to disseminate a product into all fifty states—mere awareness that a third party will distribute a product nationwide will not suffice. *Parker v. Winwood*, 938 F.3d 833, 841 (6th Cir. 2019).

Having failed to establish that Third-Party Defendants placed a product into the stream of commerce, CooperSurgical advances only one "plus" factor, noting that Embryotech engaged in business solicitation at trade shows and on the internet. (*See* Response, Doc. 31, Pg. ID 539–40.) This activity, CooperSurgical argues, shows that Third-Party Defendants purposefully solicited business from a national market, which includes Ohio. (*Id.* at Pg. ID 540.) While "advertising is among the activities that constitute reaching out to forum state residents," merely soliciting from a national audience, without a showing that such solicitation targets or actually reaches the forum state, is insufficient to demonstrate purposeful availment. *Bridgeport Music*, 327 F.3d at 481 (cleaned up). Further, because these solicitation activities do not relate to the media product at issue in this case, they fall short of establishing that Third-Party Defendants

9

controlled or directed the flow of media into Ohio. Finally, CooperSurgical identifies no distinctive characteristics of Ohio that would connect it with the media product at issue here more than it would any other state. As such, CooperSurgical fails to show a required "plus" factor in presenting its stream of commerce theory.

After advancing its stream of commerce theory, CooperSurgical next argues that Third-Party Defendants availed themselves of Ohio law because Embryotech maintains a website that solicits business from a national audience, which includes Ohio. (Response, Doc. 31, Pg. ID 540–41.) "A defendant purposefully avails itself of the privilege of acting in a state through its website if the website is interactive to a degree that reveals specifically intended interaction with residents of the state." *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 890 (6th Cir. 2002). However, a website with interactive features that facilitate communications with individuals in a state, without a showing that such communications are specifically intended to target the state, is insufficient to establish purposeful availment. *See See, Inc., v. Imago Eyewear Pty, Ltd.*, 167 F. App'x 518, 522 (6th Cir. 2006).

As discussed above, CooperSurgical asks the Court to take judicial notice of Embryotech's website. (Request for Judicial Notice, Doc. 30.) CooperSurgical contends that this interactive website solicits business and includes features that allow prospective customers to contact the company, ask for a phone call, and request a quote for testing services. (Response, Doc. 31, Pg. ID 540.) But, even if the Court were to take judicial notice of these facts, this website alone is not enough to show that Third-Party Defendants "specifically intended" to aim their conduct at Ohio—the mere possibility that an Ohio

10

resident might visit the website is not indicative of any degree of geographic targeting. *See, e.g., Growella, Inc. v. Ganz*, No. 1:23-CV-832, 2024 U.S. Dist. LEXIS 145144, at *3, *8 (S.D. Ohio Aug. 14, 2024); *Cadle Co. v. Schlichtmann*, 123 F. App'x 675, 678 (6th Cir. 2005). As such, purposeful availment by Third-Party Defendants is not established here.

### ii. Arising from Contacts with the Forum

The prospect of exercising jurisdiction over Third-Party Defendants also runs aground on the second prong. Though a cause of action need not "formally" arise from a defendant's contacts with the forum, "the operative facts [must] at least marginally relate[] to the alleged contacts between the defendant and the forum." *Air Prod. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 553 (6th Cir. 2007); *Lyngaas v. Curaden Ag*, 992 F.3d 412, 423 (6th Cir. 2021) (quotation omitted). And, importantly, "[t]he plaintiff's claims must arise out of or relate to the defendant's contacts with the forum"—not the plaintiff's unilateral contacts with the forum. *Ford Motor Co.*, 592 U.S. at 358. Here, Third-Party Defendants did not manufacture any component of the media product in question—CooperSurgical alone produced the media. (Third-Party Compl., Doc. 15, ¶¶ 11–12.) CooperSurgical does not allege that Third-Party Defendants had any control over its decision to sell or market the product. Thus, even if purposeful availment were present here, personal jurisdiction is lacking because CooperSurgical's causes of action do not arise from Third-Party Defendants' activities in Ohio.

Additionally, CooperSurgical's website theory of purposeful availment also fails at the second prong. An interactive website that is available nationally, even if sufficient to establish purposeful availment, must also be "the basis of the cause of action against

11

the defendant" for such a theory to support personal jurisdiction. *Cadle Co. v. Schlichtmann*, 123 F. App'x 675, 678 (6th Cir. 2005). CooperSurgical does not show that its causes of action against Third-Party Defendants arose from CooperSurgical's purported use of the Embryotech website in Ohio. Thus, even if CooperSurgical could demonstrate purposeful availment by showing that Embryotech's website was specifically intended for an Ohio audience, personal jurisdiction would still be lacking.

For all these reasons, CooperSurgical has not shown that the Court can properly exercise personal jurisdiction over Embryotech.

### B. Alter-Ego Theory of Jurisdiction

CooperSurgical also argues for exercising personal jurisdiction over Hamilton Thorne under an alter-ego theory due to its relationship with Embryotech. (Response, Doc. 31, Pg. ID 543–46.) "[F]ederal courts have consistently acknowledged that it is compatible with due process for a court to exercise personal jurisdiction over an individual or a corporation that would not ordinarily be subject to personal jurisdiction in that court when the individual or corporation is an alter ego or successor of a corporation that would be subject to personal jurisdiction in that court." *Est. of Thomson ex rel. Est. of Rakestraw v. Toyota Motor Corp. Worldwide*, 545 F.3d 357, 362 (6th Cir. 2008) (quotation omitted). In this case, as the Court lacks personal jurisdiction over Embryotech, the alter-ego theory of jurisdiction pertaining to Hamilton Thorne is unavailing.

12

## C. Jurisdictional Discovery

CooperSurgical finally requests that the Court grant leave to conduct jurisdictional discovery if it is inclined to find a lack of personal jurisdiction. (Response, Doc. 31, Pg. ID 547–48.) A district court has discretion to grant or deny jurisdictional discovery, and a party does not have an unqualified right to such discovery. *Angel's Dream, LLC v. Toledo Jet Ctr., LLC*, 684 F. Supp. 3d 663, 670 (N.D. Ohio 2023). In requesting jurisdictional discovery, plaintiffs "must do more than 'merely assert' the need for discovery; instead, they must 'explain what evidence relevant to . . . jurisdiction they [would be] denied from obtaining.'" *C.H. By & Through Shields v. United States*, 818 F. App'x 481, 484 (6th Cir. 2020) (quotation omitted). Such a request must also provide the district court with a "reasonable basis to expect that discovery would reveal evidence that supports the claimed jurisdiction." *Id.* (cleaned up).

Here, CooperSurgical seeks jurisdictional discovery to uncover potential contracts between Third-Party Defendants and clinics and universities in Ohio, potential business solicitation activities by Third-Party Defendants involving Ohio, and whether and to what degree the Embryotech website targets Ohio. (Response, Doc. 31, Pg. ID 548.) The Court does not find such jurisdictional discovery necessary. CooperSurgical fails to identify a reasonable basis to expect that any particular evidence could be revealed through discovery to alter the Court's preceding jurisdictional analysis. Mere speculation or conjecture will not suffice. *See C.H.*, 818 F. App'x at 484–85. As such, the Court therefore denies CooperSurgical's request for jurisdictional discovery.

## CONCLUSION

For the foregoing reasons, the Court **ORDERS** the following:

1) Third-Party Defendants' Motions for Leave to File Notice of Supplemental Judicial Opinion (Docs. 34, 36) are **GRANTED**;

2) CooperSurgical's Request for Judicial Notice (Doc. 30) is **GRANTED IN PART**;

3) Third-Party Defendants' Motions to Dismiss (Docs. 22, 24) are **GRANTED**;

4) CooperSurgical's Third-Party Complaint (Doc. 15) is **DISMISSED WITHOUT PREJUDICE**; and

**IT IS SO ORDERED.**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

By: *[signature]*
JUDGE MATTHEW W. McFARLAND